ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| MANOR CONTRACTORS, CORP.<br><br>Recurrente<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE HUMACAO<br><br>Recurrido | KLRA202500265 | *Revisión Judicial* procedente de la Junta de Subastas del Municipio Autónomo de Humacao<br><br>Subasta Número: 24-25-37<br><br>Sobre: Adjudicación de Subasta |

Panel integrado por su presidenta, la Jueza Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm.

Prats Palerm, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de mayo de 2025.

Comparece Manor Contractors, Corp. ("Manor Contractors" o "Recurrente") mediante *Recurso de Revisión Judicial* y nos solicita que revoquemos la *Notificación de Adjudicación* de la Subasta Núm. 24-25-37, emitida el 28 de abril de 2025, por la Junta de Subastas del Municipio Autónomo de Humacao ("Junta de Subastas" o "Recurrida"). Mediante el referido dictamen, la Junta de Subastas adjudicó la subasta a favor de Puerto Rico Asphalt Group, LLC.

Por los fundamentos que proceden, se *Revoca* la *Notificación de Adjudicación* recurrida.

**I.**

El 18 de marzo de 2025, la Junta de Subastas publicó el Aviso de Subasta 24-25-37, para la repavimentación de calles y caminos comunales en la Urbanización Quintas de Candelero Arriba, ubicada en el Municipio de Humacao. En aras de competir en la referida subasta, los siguiente seis (6) licitadores presentaron propuestas: Rotann Group, LLC; Manor Contractors, Corp.; Bella Sofia Contractors, Inc.; TS Site and Asphalt Group, LLC; Puerto Rico Asphalt, LLC; y A&M Solutions, LLC.

Como parte del proceso evaluativo, el 2 de abril de 2025, la Junta de Subastas celebró una reunión, a los fines de adjudicar la subasta. Según el *Acta de Reunión* de la adjudicación, la Junta de Subastas realizó los siguientes señalamientos sobre los licitadores perdidosos:

**A&M Solutions, LLC:** Si bien se desprende de su perfil corporativo el contar con la experiencia y trayectoria respecto a lo requerido en la Subasta 24-25-37, al evaluarse la licitación presentada resultó ser la de mayor costo en comparación con los demás licitadores del proceso.

**Bella Sofía Contractors, INC:** En la evaluación de su experiencia por medio de su perfil corporativo esta se ha especializado en asuntos como las mejoras de infraestructura a instalaciones como canchas y edificios. La experiencia o referencia presentada en materia de labores de asfalto son mínimas, donde se entiende han sido subcontratadas por empresas de asfalto con más trayectoria y experiencia que estos en el mercado.

**Manor Contractors, Inc:** Respecto a su perfil corporativo no se desprende su experiencia atendiendo proyectos relacionados a los que se requieren en la Subasta Núm. 24-25-37.

**Rotann Group, LLC:** Su propuesta fue descartada, porque luego de la evaluación realizada y a pesar de ser el licitador con el menor costo, su licitación se apartó de la razonabilidad cuando quedó un cuarenta y nueve por ciento (49%) por debajo del estimado de costos del proyecto realizado por la Oficina de Gerencia de Proyectos del Municipio Autónomo de Humacao. Además, quedó muy por debajo en promedio de las demás propuestas de licitación recibidas.

**TS Site & Asphalt Group, LLC:** Fue descartada como parte de la documentación que se requería fuere presentada; Estados Financieros, los datos y documentación presentada no permiten los elementos de juicio suficientes para establecer la solvencia económica como empresa.[1]

Siendo así, la agencia recurrida adjudicó, por unanimidad, la *Subasta Núm. 24-25-37* a favor de Puerto Rico Asphalt. Como resultado, el 3 de abril de 2025, la Junta de Subastas emitió la notificación de adjudicación. La Junta de Subastas desglosó las propuestas presentadas de la siguiente manera:

1. Puerto Rico Asphalt, LLC           $449,049.53
2. A&M Solutions, LLC                 $522,700.85
3. Manor Contractors, Corp.           $387,139.15
4. Bella Sofía Contractors, Inc.      $399,685.00
5. Rotann Group, LLC                  $280,616.38
6. TS Site and Asphalt Group, LL      $415,727.75[2]

No obstante, luego de que Manor Contractors y Rotann Group solicitaran su revisión judicial, ya que alegaban que la notificación no

---

[1] Apéndice de la parte recurrente, pág. 19.
[2] Apéndice de la parte recurrente, pág. 1.

estipuló las razones que justificaban la adjudicación de la subasta, el 28 de abril de 2025, la Junta de Subastas emitió una segunda *Notificación de Adjudicación*. La segunda notificación revocó y dejó sin efecto la determinación previamente dictada. Mediante la nueva determinación, la recurrida añadió la siguiente explicación:

> [...] En comparación con todos los licitadores participantes, al evaluar su perfil corporativo, se desprende una vasta experiencia atendiendo proyectos de asfalto donde incluyeron proyectos a nivel de todo el país tanto entidades públicas como privadas. La evaluación de su situación financiera refleja solvencia económica y la cantidad de su licitación se encontró razonable con las credenciales presentadas en sus años de trayectoria en el mercado, así como por debajo del estimado de costos del proyecto. De otra parte, el licitador seleccionado, en experiencias previas, ha demostrado responsabilidad respecto al término de tiempo para la entrega de los servicios, cumpliendo con los términos contractuales pactados. Considerándose esta licitación como una que genera un balance entre el interés público y los requerimientos de la Subasta Núm. 24-25-37.[3]

Insatisfecho, el 7 de mayo de 2025, Manor Contractors acudió ante nos mediante *Recurso de Revisión Judicial*. La recurrente realizó los siguientes señalamientos de errores:

> **Erró la Junta de Subastas al adjudicar la buena pro de la Subasta Núm. 24-25-37 a Puerto Rico Asphalt, LLC., a pesar de que este fue el segundo postor más caro, cuando Manor Contractors cumplió con todos los requisitos del pliego a un precio considerablemente más bajo.**

> **Erró la Junta de Subastas al adjudicar la buena pro de la Subasta Núm. 24-25-37 a Puerto Rico Asphalt, LLC., sin llevar a cabo un análisis exhaustivo y/o no exponer las razones y los motivos que justifican tal concesión.**

El 27 de mayo de 2025, la Junta de Subastas notificó su *Alegato en Oposición a Revisión de Acto Administrativo*. Examinado el recurso, así como el expediente administrativo y el derecho aplicable, nos encontramos en posición de resolver.

## II.

### -A-

Las subastas son el medio a través del cual se invita a varios proponentes a presentar ofertas para la adquisición de bienes y servicios. *Transporte Rodríguez v. Jta. Subastas*, 194 DPR 711, 716 (2016).

---

[3] Apéndice de la parte recurrente, pág. 5.

El fin primordial del proceso de subasta "es proteger los fondos públicos, fomentando la libre y diáfana competencia entre el mayor número de licitadores posibles". *Transporte Rodríguez v. Jta. Subastas, supra*, pág. 716; *Empresas Toledo v. Junta de Subastas*, 168 DPR 771, 778 (2006).

Por ello, a través de las subastas, se pretende lograr los precios más bajos posibles, evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgar los contratos y minimizar los riesgos de incumplimiento, a la vez que promueve la competencia de licitadores responsables. *RBR Const., S.E. v. A.C.*, 149 DPR 836, 849 (1999); *Mar-Mol, Co. v. Adm. Servicios Gens.*, 126 DPR 864, 871 (1990); *Cancel v. Municipio de San Juan*, 101 DPR 296, 300 (1973). Es por esto que, el procedimiento de pública subasta es de suma importancia y está revestido del más alto interés público. *Empresas Toledo v. Junta de Subastas, supra*, pág. 778, citando a *Oliveras Inc. v. Universal Insurance Co.*, 141 DPR 900, 925 (1996).

El Tribunal Supremo de Puerto Rico ha reiterado la importancia que reviste para la buena marcha de la cosa pública, que los procesos de adquisición de bienes y servicios del gobierno se lleven a cabo con eficiencia, honestidad y completa probidad. *R & B Power v. E.L.A.*, 170 DPR 606, 619 (2007); *Empresas Toledo v. Junta de Subastas, supra*, pág. 778; *A.E.E. v. Maxon*, 163 DPR 434, 439 (2004). **Cuando está involucrado el uso de bienes o fondos públicos, es esencial la aplicación rigurosa de todas las normas pertinentes a la contratación y desembolso de dichos fondos, a fines de proteger los intereses y el dinero del Pueblo.** (Énfasis suplido). *De Jesús González v. A.C.*, 148 DPR 255, 268 (1999).

**-B-**

Los tribunales, en su función revisora, tienen el deber de examinar que en los procesos de subastas del gobierno no resulte adversamente afectado el erario o se menoscabe el esquema de ley que persigue asegurar la integridad de las subastas públicas. *Cotto v. Depto. de Educación*, 138 DPR 658, 66 (1995). La función revisora del tribunal en controversias en

torno a la adjudicación de subastas, tiene como propósito fundamental delimitar la discreción de los organismos administrativos y velar porque sus actuaciones sean conformes a la ley y estén dentro del marco del poder delegado. *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 129 (1998).

A esos efectos, el Tribunal Supremo ha reconocido que, de ordinario, las agencias administrativas se encuentran en mejor posición que los tribunales para evaluar las propuestas o licitaciones ante su consideración a la luz de los parámetros establecidos por la ley y los reglamentos aplicables. *Aut. Carreteras v. CD Builders, Inc.*, 177 DPR 398, 408 (2009). Siendo así, una vez la agencia o junta involucrada emite una determinación, los tribunales no deberán intervenir con esta, salvo que se demuestre que la misma fue contraria a derecho. *A.E.E. v. Maxon, supra*, pág. 445.

El peso de la prueba para demostrar la ocurrencia de fraude o abuso de discreción recae en el recurrente, y si este no puede demostrar ausencia de factores racionales o razonables para la determinación de la agencia, deberá demostrar un perjuicio o una violación a los estatutos o reglamentos aplicables. *Empresas Toledo v. Junta de Subastas, supra*, pág. 783. Siendo así, en ausencia de fraude, mala fe, o abuso de discreción, ningún postor tiene derecho a quejarse cuando otra proposición es elegida como la más ventajosa, ya que no ostentan un derecho adquirido en ninguna subasta y la cuestión deberá decidirse a la luz del interés público. *Torres Prods. v. Junta Mun. Aguadilla*, 169 DPR 886, 898 (2007).

Asimismo, tomando en consideración el interés público, una agencia administrativa está facultada a "rechazar la oferta más baja por una más alta, siempre y cuando esta determinación no esté viciada por fraude o sea claramente irrazonable". *Empresas Toledo v. Junta de Subastas, supra*, pág. 783. Cónsono con lo anterior, el Artículo 2.040 (a) del Código Municipal, 21 LPRA sec. 7216, estipula lo siguiente:

> La Junta podrá adjudicar a un postor que no sea necesariamente el más bajo o el más alto, según sea el caso, si con ello se beneficia el interés público. En este caso, **la Junta deberá hacer constar por**

**escrito las razones aludidas como beneficiosas al interés público que justifican tal adjudicación**.

(Énfasis suplido)

De igual manera, el aludido artículo consagra que **la Junta de Subastas deberá notificarles a los licitadores no agraciados "las razones por las cuales no se le adjudicó la subasta"**. (Énfasis suplido).

*Íd.* A su vez, la Sección 13, Capítulo VIII, Parte II del *Reglamento para la Administración Municipal de 2016*, Reglamento Núm. 8873, de 19 de diciembre de 2016, establece la información que deberá contener la notificación de adjudicación, a saber:

a) nombre de los licitadores;
b) síntesis de las propuestas sometidas;
c) **factores o criterios que se tomaron en cuenta para adjudicar la subasta y las razones para no adjudicar a los licitadores perdidosos**;
d) derecho a solicitar revisión judicial de la adjudicación o acuerdo final [...];
e) fecha de archivo en auto de la copia de la notificación y la fecha a partir de la cual comenzará a transcurrir el término para impugnar la subasta ante el Tribunal de Apelaciones.

(Énfasis suplido)

### III.

Por incidir sobre nuestra facultad revisora, comenzaremos por la discusión del segundo error señalado. Mediante el segundo señalamiento de error, Manor Contractors sostiene que la agencia recurrida incidió al no llevar a cabo un análisis exhaustivo y no exponer las razones que justifican la adjudicación de la subasta. De manera particular, aduce que la *Notificación de Adjudicación* carece de los siguientes elementos: (1) una síntesis de las propuestas sometidas; (2) los factores o criterios que consideró para su adjudicación; y (3) las razones o los defectos, si alguno, de las propuestas sometidas por los licitadores no agraciados.

Evaluado el recurso de epígrafe, con particular atención al contenido de la *Notificación de Adjudicación*, concluimos que la determinación no cumple con los requisitos exigidos por el Reglamento 8873. Según surge de la discusión que antecede, el Artículo 2.040 del Código Municipal, *supra*, establece que la Junta de Subastas deberá notificarles a los licitadores no agraciados las razones por las cuales no se les adjudicó la

subasta. Asimismo, la Sección 13, Capítulo VIII, Parte II del Reglamento 8873, *supra*, añade que la determinación final deberá contener: (1) el nombre de los licitadores; (2) **una síntesis de las propuestas sometidas**; (3) los factores o criterios que se tomaron en consideración para adjudicar la subasta y **las razones para no adjudicar a los licitadores perdidosos**; (4) el derecho a solicitar revisión judicial; y (5) la fecha de archivo en auto de la notificación.

Como bien señala la parte recurrente, la *Notificación de Adjudicación* no contiene una síntesis de las propuestas sometidas. Según se desprende, la Junta de Subastas se limitó a incluir los precios propuestos por los licitadores. No obstante, ello no constituye un resumen de las propuestas de cada licitador, según requiere el Reglamento 8873.

Por otro lado, la determinación recurrida tampoco comprende las razones por las cuales no adjudicó la buena pro de la subasta a favor de los licitadores no agraciados, conforme exige la normativa expuesta. Ciertamente, tales razones fueron expuestas en el *Acta de Reunión*. Sin embargo, los estatutos aplicables, requieren que dicha información forme parte de la determinación final de la Junta de Subastas, lo cual no ocurrió en el caso de autos. *Siendo* así, la *Notificación de Adjudicación* carece de eficacia, toda vez que no se hizo conforme a la normativa vigente.

A la luz de lo anterior, no nos corresponde la discusión del primer señalamiento de error.

**IV.**

Por los fundamentos que anteceden, se *Revoca* la *Notificación de Adjudicación* recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones