Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| NORTH SIGHT COMMUNICATIONS, LLC<br><br>Recurrente<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE AGUADILLA; JUNTA DE SUBASTAS DEL MUNICIPIO AUTÓNOMO DE AGUADILLA<br><br>Recurridos<br><br>JULIO SANTOS APONTE DBA DIVERSIFIED BUSINESS SYSTEMS<br><br>Proponente Seleccionado<br><br>JG SOLUTIONS; ARIMAR, INC.; BONNEVILLE CONTRACTING AND TECHNOLOGY GROUP LLC; AMPHEX GROUP, LLC; GENESIS SECURITY SERVICES, INC.<br><br>Otros Proponentes | KLRA202300601 | *REVISIÓN ADMINISTRATIVA* Procedente de la Junta de Subastas del Municipio Autónomo de Aguadilla<br><br>Núm.: 2024-62<br><br>Sobre: Impugnación de Adjudicación de Subasta Núm. 2024-62 sobre ¨Adquisición e Instalación de Cámaras de Seguridad Centros Head Start y Early Head Start¨ |

Panel integrado por su presidente, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Prats Palerm[1].

*Prats Palerm, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de febrero de 2024.

Comparece el recurrente, North Sight Communications, LLC (¨recurrente¨ o ¨NSC¨) mediante recurso de revisión administrativa. Solicita la revisión de la *Notificación de Adjudicación de Subasta* notificado por la Junta de Subastas del Municipio Autónomo de

---

[1] Véase OATA-2023-212 del 6 de diciembre de 2023.

Aguadilla ("recurridos" o "Junta de Subastas") el 16 de noviembre de 2023, con relación a la Subasta Núm. 2024-62. Mediante esta, la Junta de Subastas notificó la adjudicación de la buena pro de la subasta a Julio Santos Aponte DBA Diversified Business Systems ("DBA").

## I.

Conforme surge del expediente de autos, el 11 de septiembre de 2023, el Municipio Autónomo de Aguadilla ("Municipio") publicó una invitación sobre la Subasta Núm. 2024-62 para la *Adquisición e Instalación de Cámaras de Seguridad Centros Head Start y Early Head Start*, a llevarse a cabo el 3 de octubre de 2023.

En lo pertinente, el Municipio estableció como Requisitos Generales que:

> NO SE CONSIDERARÁN PROPUESTAS QUE SUS LICITADORES NO CUMPLIERAN CON LOS REQUISITOS SOLICITADOS.
> [...]
> "DEBEN CUMPLIR CON ´BUY AMERICAN LAWS AND BUY AMERICAN ACTS´ (LEY DE COMPRA DE PRODUCTOS ESTADOUNIDENSES)". Véase, página 26 y 32-33 del Apéndice del Recurso de Revisión.

Previo a la fecha de apertura de la subasta, los licitadores tuvieron la oportunidad de someter preguntas a la Junta de Subastas. El 26 de septiembre de 2023, la Junta de Subastas circuló el *Addemdum #1* respondiendo a preguntas sometidas por NSC, Amphex Group, LLC ("Amphex"), Bonneville Contracting & Technology Group, LLC ("Bonneville"), JG Solutions ("JG"), Genesis Security Services, Inc. ("Genesis"), Arimar, Inc. ("Arimar") y AGMA Security ("AGMA"). Tras una interrogante sometida por NSC, la Junta de Subastas respondió:

> Preguntas y/o comentarios hechos por **North Sight Communications, LLC**
>
> 1. Tomando en consideración que los fondos utilizados para la adquisición del sistema de cámaras de seguridad son federales, favor de validar que los

licitadores deben cumplir con el ¨Buy American Act¨ (Made in USA).

***Contestación: Sí, todo lo instalado debe de cumplir con ¨Buy American Act¨.***

[...]. Véase, página 51 del Apéndice del Recurso de Revisión.

Así, el 3 de octubre de 2023, NSC, Amphex, Bonneville, JG, Arimar, AGMA y Julio Santos presentaron ofertas.

Posteriormente, el 16 de noviembre de 2023, la Junta de Subastas notificó el *Aviso de Adjudicación de la Subasta*, adjudicando la buena pro de la subasta a Julio Santos, ¨ya que fue el licitador con la oferta más económica; cumplió con todas las especificaciones y completó los documentos del Registro de Licitador¨.

Surge de la notificación que los licitadores realizaron las siguientes propuestas: (1) JG, $94,280.00; (2) NSC, $358,408.56; (3) Arimar, $190,264.24; (4) Julio Santos, $73,845.00; (5) Bonneville, $390,000.00; (6) Amphex, $130,596.00, y; (7) Genesis, $89,824.31. A su vez, indicaron que todos los licitadores, excepto JG y Amphex, cumplieron con las especificaciones y certificaciones requeridas.

Inconforme, el 22 de noviembre de 2023, NSC acudió ante este Tribunal mediante *Recurso de Revisión Judicial*. Solicitó que revoquemos la determinación de la Junta de Subastas y ordenemos que se adjudique la buena pro de la subasta a NSC. Realizó el siguiente señalamiento de error:

> Erró la Junta de Subastas del Municipio al adjudicar la buena pro de la Subasta a Julio Santos, a sabiendas de que la oferta de Julio Santos no cumplió con múltiples requerimientos y especificaciones de la Subasta y por ende no era responsiva.

Los recurrentes argumentaron que, el *Buy American Act*, requiere que todos los productos manufacturados y materiales de construcción utilizados en proyectos gubernamentales de infraestructura sean producidos en los Estados Unidos. NSC señaló

que en los Requisitos Generales y en el *Addendum #1* de la Junta de Subastas quedó establecido que los licitadores debían cumplir con el *Buy American Act*.

NSC destacó que el licitador seleccionado, Julio Santos, incumplió con el *Buy American Act* al cotizar cámaras de seguridad Epcom E Series sin certificar que provenían de los EE. UU. Expusieron que, las cámaras Epcom E Series son manufacturadas por Shenzhen TVT Digital Technology Co., Ltd., quienes operan varias sucursales en China.

De igual manera, alegaron que Genesis y Arimar tampoco cumplieron con el *Buy American Act*. Evidenciaron que las cámaras modelo ipc324sr3-dsf28km-g, cotizadas por Genesis son manufacturadas por Uniview, cuyas oficinas centrales se encuentran localizadas en China, según surge de la página de internet de la compañía. Por su parte, Arimar cotizó cámaras Eagle Eye Networks/Geovision e indicó en su propuesta que provenían de ¨USA/Taiwan/China¨.

Debido a esto, NSC adujo que procedía descalificar y rechazar las ofertas de Julio Santos, Genesis y Arimar, ya que incumplieron con el requisito de que los productos fueran manufacturados en los EE. UU.

En cambio, NSC adujo que cotizó las cámaras de seguridad Motorola Pelco VideoXpert Professional con procedencia de EE. UU. También alegó que, anejó en su oferta una carta del manufacturero, Motorola Solutions, certificando que es un fabricante de los EE. UU., en cumplimiento con el *Buy American Act*.

Por otro lado, señaló que conforme a las *Condiciones Generales de la Subasta* y al *Addendum #1* se requería que los licitadores proveyeran: (1) copia vigente de la Certificación de Elegibilidad de la Administración de Servicios Generales (¨ASG¨); (2) estados financieros certificados por un CPA; (3) copia de las

especificaciones detalladas con el proyecto, acreditando que se cumple con las mismas, y; (4) garantía mínima de un (1) año de piezas y servicio.

Según NSC, Julio Santos, Génesis y Arimar no proveyeron, junto con sus ofertas, copia vigente del Certificado de Elegibilidad de la ASG, estados financieros certificados por un CPA y las especificaciones detalladas de los productos ofertados. Además, señaló que Arimar no proveyó una garantía para el producto cotizado. Por su parte, alegó que NSC cumplió con todos los requisitos y especificaciones.

El 28 de noviembre emitimos una *Resolución* concediéndole a las partes recurridas hasta el 22 de diciembre de 2023 para presentar su alegato en oposición.

Luego, el 4 de diciembre de 2023, Julio Santos presentó una *Solicitud de Prórroga para Presentar el Alegato en Oposición de la Revisión de Decisión Administrativa*. Mediante *Resolución* del 6 de diciembre de 2023, extendimos el término para presentar alegato hasta el 8 de enero de 2024.

El 3 de enero de 2024, el Municipio de Aguadilla presentó una *Solicitud de Desestimación y/u Oposición a Solicitud de Revisión Judicial en Cumplimiento de Resolución*.

El Municipio adujo que, previo a acudir en revisión judicial, los recurrentes solicitaron y se les hizo entrega de las propuestas de todos los licitadores, conforme a la Ley 141-2019, *Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública*. No obstante, alegó que NSC no solicitó los anejos de las propuestas y, en consecuencia, no se le hizo entrega de estos. Según el Municipio, los anejos demuestran que las propuestas de Julio Santos, Genesis y Arimar cumplieron con los requisitos y especificaciones de la Junta de Subastas.

Añadieron que, Julio Santos sometió una propuesta completa y que la misma cumplía con el pliego de especificaciones. Sobre el requisito de *Buy American*, expresaron que las cámaras Epsom Series E fueron adquiridas a El Paso Communications Systems, Inc. dba Epcom, (¨EPCS¨) la cual adujeron que es una planta de ensamblaje ubicada en El Paso, Texas. Además, el Municipio señaló que, en el documento de descripción de propuesta, Julio Santos certificó, a puño y letra, que la procedencia de dichos productos es ¨USA¨.

El Municipio presentó el documento de descripción de propuesta sometido por Julio Santos. Surge del mismo documento, que Julio Santos incluyó un *Statement* de TVT en donde declararon:

> To parties concerned:
>
> We SHENZHEN TVT DIGITAL TECHNOLOGY CO., l.td, the supplier of ¨E¨ Series CCTV products mentioned hereby, having its principal place of business at 23rd Floor Building B4 Block 9, Shenzhen Bay science and technology ecological garden, Nanshan District, Shenzhen, P.R. China make, constitute and appoint El Paso Communication Systems, Inc., dba EPCOM, a company duly organized under the laws of USA and having its principal place of business at 1630 E Paisano Dr, El Paso, TX, USA, 79901, to be our true and lawful partner in fact to do the following acts and deeds to supply non-Hilisilicon product line as enlisted below [...]. Véase, página 69 del Apéndice del Recurso en Oposición.

Al final del referido *Statement*, firmaron los representantes de TVT y EPCS. En el recuadro correspondiente a la firma del representante de TVT se dispone ¨(Name of Supplier)¨. Por el contrario, en el de EPCS se dispone ¨(Name of **Wholesaler**)¨. (Énfasis suplido).

Posteriormente, el 8 de enero de 2024, Julio Santos presentó una *Moción Conjunta Solicitando Prórroga para Presentación de Alegato de Apelación* solicitado, nuevamente, una prórroga para presentar su alegato.

El 9 de enero de 2024, NSC presentó una *Oposición a Moción de Desestimación del Municipio de Aguadilla – Regla 68*. Expusieron

que, EPCS no manufactura ni ensambla los productos Epcom E Series ofertados, meramente distribuye los productos procedentes manufacturados por TVT en China. También señalaron que, el Municipio no presentó prueba para demostrar que los productos hayan sido manufacturados en EE. UU. En consecuencia, argumentaron que el hecho de que Julio Santos haya comprado los equipos ofertados a un suplidor en los EE. UU. y no directamente al fabricante en China no es suficiente para cumplir con el requisito del *Buy American Act.*

Vencido el término concedido a Julio Santos para exponer su oposición, damos por sometido el asunto y resolvemos.

## II.

### A. Procedimiento de Subastas

Las subastas son el medio a través del cual se invita a varios proponentes a presentar ofertas para la adquisición de bienes y servicios. *Transporte Rodríguez v. Jta. Subastas*, 194 DPR 711, 716 (2016). El fin primordial del proceso de subasta "es proteger los fondos públicos, fomentando la libre y diáfana competencia entre el mayor número de licitadores posibles". *Transporte Rodríguez v. Jta. Subastas*, supra, pág. 716; *Empresas Toledo v. Junta de Subastas*, 168 DPR 771, 778 (2006). Es por esto que, el procedimiento de pública subasta es de suma importancia y está revestido del más alto interés público. *Empresas Toledo, Inc. v. Junta de Subastas, supra.*

Por ello, el propósito de la legislación que regula la realización de obras y la contratación para la compra de bienes y los servicios de calidad necesarios para el Gobierno por vía de los sistemas de subasta gubernamentales, es la de lograr los precios más bajos posibles, evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgar los contratos

y minimizar los riesgos de incumplimiento, a la vez que promueve la competencia de licitadores responsables. *RBR Const., S.E. v. A.C.,* 149 DPR 836 (1999) ; *Mar-Mol, Co. v. Adm. Servicios Gens.,* 126 DPR 864, 871 (1990); *Cancel v. Municipio de San Juan,* 101 DPR 296, 300 (1973).

**Cuando está involucrado el uso de bienes o fondos públicos, es esencial la aplicación rigurosa de todas las normas pertinentes a la contratación y desembolso de dichos fondos, a fines de proteger los intereses y el dinero del Pueblo.** *De Jesús González v. A.C.,* 148 D.P.R. 255 (1999). (Énfasis suplido).

El Artículo 2.035 del Código Municipal, Ley Núm. 107-2020, 21 LPRA sec. 7211, regula lo pertinente a las subastas celebradas por los municipios. En lo pertinente, dispone que la adjudicación de las subastas será realizada por la Junta de Subastas. A su vez, establece que ¨[e]l municipio establecerá un reglamento que incluirá, entre otros asuntos, las condiciones y requisitos que solicite el municipio para la adquisición de los servicios, equipos, y/o suministros necesarios¨. *Íd.*

Por otro lado, el Artículo 2.040 (a) del Código Municipal, 21 LPRA sec. 7216, apercibe que:

> La adjudicación de una subasta será notificada a todos los licitadores certificando el envío de dicha adjudicación mediante correo certificado con acuse de recibo, o mediante correo electrónico, si así fue provisto por el licitador o licitadores. [...] La Junta de Subastas notificará a los licitadores no agraciados las razones por las cuales no se le adjudicó la subasta. Toda adjudicación tendrá que ser notificada a cada uno de los licitadores, apercibiéndolos del término jurisdiccional de diez (10) días para solicitar revisión judicial de la adjudicación ante el Tribunal de Apelaciones, de conformidad con el Artículo 1.050 de este Código.

Sobre la revisión judicial de las subastas, el Art. 1.050, 21 LPRA sec. 7081, dispone:

> El Tribunal de Apelaciones revisará, el acuerdo final o adjudicación de la Junta de Subastas, el cual se notificará por escrito y mediante copia por correo escrito

regular y certificado a la(s) parte(s) afectada(s). La solicitud de revisión se instará dentro del término jurisdiccional de diez (10) días contados desde el depósito en el correo de la copia de la notificación del acuerdo final o adjudicación. La notificación deberá incluir el derecho de la(s) parte(s) afectada(s) de acudir ante el Tribunal de Circuito de Apelaciones para la revisión judicial; término para apelar la decisión; fecha de archivo en auto de la copia de la notificación y a partir de qué fecha comenzará a transcurrir el término. La competencia territorial será del circuito regional correspondiente a la región judicial a la que pertenece el municipio.

### B. Revisión judicial

Ahora bien, corresponde delimitar el alcance de la función revisora de los tribunales en casos de subastas celebradas por agencias gubernamentales.

Los tribunales, en su función revisora, tienen el deber de examinar que en los procesos de subastas del gobierno no resulte adversamente afectado el erario público o se menoscabe el esquema de ley que persigue asegurar la integridad de las subastas públicas. *Cotto Guadalupe v. Departamento de Educación,* 138 DPR 658 (1995).

Asimismo, nuestro más alto foro ha expresado que las agencias administrativas, de ordinario, se encuentran en mejor posición que los tribunales para evaluar las propuestas o licitaciones ante su consideración a la luz de los parámetros establecidos por la ley y los reglamentos aplicables. *Autoridad de Carreteras y Transportación v. CD Builders, Inc.*, 177 DPR 398 (2009).

Una vez la agencia o junta involucrada emite una determinación, los tribunales no deberán intervenir con ésta salvo que se demuestre que la misma se tomó de forma arbitraria, caprichosa o mediando fraude o mala fe, pues la agencia, con su vasta experiencia y especialización, se encuentra, de ordinario, en mejor posición que el foro judicial para determinar el mejor licitador, tomando en consideración los factores esgrimidos tanto por la ley

como por su reglamento de subastas. *A.E.E. v. Maxon*, 163 DPR 434 (2004).

Así, pues, en ausencia de fraude, mala fe, o abuso de discreción, ningún postor tiene derecho a quejarse cuando otra proposición es elegida como la más ventajosa. La cuestión debe decidirse a la luz del interés público y ningún postor tiene un derecho adquirido en ninguna subasta. *Víctor Torres Products v. Junta de Subastas del Municipio de Aguadilla*, 169 DPR 886 (2007).

Por otro lado, el peso de la prueba para demostrar la ocurrencia de fraude o abuso de discreción recae en el demandante, y si este no puede demostrar ausencia de factores racionales o razonables para la determinación de la agencia, deberá demostrar un perjuicio o una violación a los estatutos o reglamentos aplicables. *Empresas Toledo v. Junta de Subastas*, *supra*.

Como en el caso de cualquier decisión de una agencia administrativa, la función revisora del tribunal en controversias en torno a la adjudicación de subastas, aunque restringida, tiene como propósito fundamental delimitar la discreción de los organismos administrativos y velar porque sus actuaciones sean conformes a la ley y estén dentro del marco del poder delegado. *Misión Ind. P.R. v. J.P.*, 146 DPR 64, a la pág. 129.

### C. *Buy American Act*

El *Buy American Act* requiere que todos los materiales destinados a fines públicos adquiridos por el gobierno sean manufacturados en los Estados Unidos. A tales efectos, dispone:

**(a) In general.** —

**(1) Allowable materials.** Only unmanufactured articles, materials, and supplies that have been **mined or produced in the United States**, and only manufactured articles, materials, and supplies that have been **manufactured in the United States** substantially all from articles, materials, or supplies mined, produced, or

> manufactured in the United States, **shall be acquired for public use** unless the head of the Federal agency concerned determines their acquisition to be inconsistent with the public interest, their cost to be unreasonable, or that the articles, materials, or supplies of the class or kind to be used, or the articles, materials, or supplies from which they are manufactured, are not mined, produced, or manufactured in the United States in sufficient and reasonably available commercial quantities and of a satisfactory quality. 41 U.S.C.A. § 8302 (a)(1). (Énfasis suplido).

Como corolario de lo anterior, los productos y materiales adquiridos con fondos públicos por el Estado Libre Asociado de Puerto Rico deberán ser manufacturados en Puerto Rico o en Estados Unidos.

**III.**

Evaluado el derecho aplicable y la prueba documental, se declara No Ha Lugar la moción de desestimación del Municipio de Aguadilla, que presentaron en conjunto con su alegato en oposición.

Mediante el único señalamiento de error, NSC alega que la Junta de Subastas incidió al adjudicarle la buena pro de la subasta a Julio Santos, a sabiendas de que este incumplió con los requisitos y especificaciones de la misma. Le asiste la razón. Veamos.

En lo pertinente, la contención de NSC es que, de conformidad con el *Buy American Act,* la Junta le requirió a todos los licitadores que los productos ofertados en sus propuestas debían ser manufacturados en EE. UU. No obstante, Julio Santos incumplió con este requisito al ofertar productos manufacturados en China. En otras palabras, la postura del recurrente es que, a pesar de que la Junta de Subastas conocía la procedencia de los productos, le adjudicó la buena pro de la subasta a un licitador que no cumplió con todos los requisitos.

No existe controversia entre las partes sobre el requisito del *Buy American Act* respecto a la procedencia de los productos. La

controversia en el caso de autos gira en torno a si el licitador agraciado cumplió con el referido requisito.

El Municipio expresa que Julio Santos cumplió con el requisito ya que, adquirió los productos a EPCS, la cual alegan ser una ¨planta de ensamblaje¨ en EE. UU. Sin embargo, no presentaron prueba alguna para evidenciar que EPCS fuera una planta manufacturera.

Por el contrario, el Municipio presentó la propuesta de subasta sometida por Julio Santos con los correspondientes anejos, tal cual fue recibida por la Junta de Subastas. Entre los anejos presentados por Julio Santos, que debieron ser examinados en su totalidad, quedó demostrado que EPCS es un *wholesaler* de los productos de TVT. Es decir, TVT manufactura los productos en China y EPCS los distribuye en EE. UU.

Surge de los propios documentos presentados por el Municipio de Aguadilla ante esta Curia que, Julio Santos adquirió los productos ofertados en EE. UU. a una distribuidora de productos manufacturados en China. El Municipio no puede alegar que los productos cotizados cumplen con el requisito de *Buy American Act* cuando la referida legislación expresamente establece que los productos adquiridos con fondos públicos deberán ser manufacturados en EE. UU. El mero hecho de adquirir los productos en EE. UU. no es suficiente para cumplir con los requisitos de la Ley cuando el producto en controversia no fue manufacturado dentro del territorio estadounidense.

**IV.**

Por todo lo anterior, se *revoca* el *Aviso de Adjudicación de la Subasta.* Consecuentemente, se devuelve el caso ante la consideración de la Junta de Subastas del Municipio de Aguadilla

para que adjudique la buena pro de la Subasta Núm. 2024-62 al licitador que cumpla con todos los requisitos dispuestos por ley.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Marrero Guerrero está conforme con el resultado alcanzado mediante el cual se revoca la determinación de la Junta de Subastas del Municipio de Aguadilla por el incumplimiento por parte del licitador agraciado con los requisitos de la Subasta.  Sin embargo, disiente de la determinación de devolver el asunto ante la consideración de la Junta de Subastas del Municipio, y ordenaría la adjudicación de la Subasta 2024-62 a la parte recurrente. Véase casos KLRA202300637, KLRA201500742, KLRA20151196.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones